[No. D005182. Fourth Dist., Div. One. July 24, 1987.]

SAFE-LAB, INC., Plaintiff and Appellant, v.
KENNETH WEINBERGER, Defendant and Respondent.

COUNSEL

Jon P. Chester for Plaintiff and Appellant.

David R. Clark and Jenkins & Perry for Defendant and Respondent.

OPINION

**WIENER, Acting P. J.**—The issue in this case is whether California can constitutionally assert personal jurisdiction over a Nevada resident employed as a marketing consultant by a California corporation in a breach of contract action by the corporation. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

In late 1984, plaintiff Safe-Lab, Inc., and defendant Kenneth Weinberger began discussing the possibility of Weinberger acting as a marketing representative for Safe-Lab. Safe-Lab is a California corporation engaged in the production of glassware and equipment for chemistry laboratories. Its principal place of business is in Santee, California. Weinberger is a resident of Reno, Nevada. Following a negotiation session in San Diego, Safe-Lab mailed a draft of a consulting contract to Weinberger in Reno, which he signed and returned to Safe-Lab. The contract provided for payment of $1,500 per month to Weinberger and specified that California law would govern its provisions. Safe-Lab's complaint alleges that in August 1985 the contract was orally modified to provide that Weinberger would work exclusively for Safe-Lab. In exchange, his compensation was increased to $3,500 per month. Safe-Lab claims Weinberger breached the modified contract by working for firms other than Safe-Lab after August 1985.

Although most of Weinberger's marketing efforts were directed outside of California, approximately 5 percent involved California contacts. In addition, Weinberger made monthly trips to California to confer with Safe-Lab personnel with respect to marketing strategy. These visits generally lasted two to three days.

After being served with Safe-Lab's complaint, Weinberger appeared specially and moved to quash service of summons on the ground he lacked the requisite "minimum contacts" with California to justify its assertion of personal jurisdiction. Following argument on the motion, the superior court reversed its tentative ruling and granted the motion to quash.[1]

---

[1] The exact basis for the superior court's ruling is unclear. The judge correctly noted that a plaintiff seeking to establish jurisdiction over a nonresident defendant bears the burden of demonstrating that jurisdiction is appropriate (*Bresler* v. *Stavros* (1983) 141 Cal.App.3d 365, 367 [189 Cal.Rptr. 58]) and was concerned that Safe-Lab submitted no factual declarations in opposition to Weinberger's motion. In this unusual procedural context, however, where the moving party does not bear the burden of proof, Safe-Lab was necessarily entitled to rely on Weinberger's declaration which was filed in support of the motion to quash. (See *Spirits, Inc.* v. *Superior Court* (1980) 104 Cal.App.3d 918, 920 [164 Cal.Rptr. 101]; *Bresler, supra,* 141 Cal.App.3d at pp. 367-368.) It is sufficient that the facts in Weinberger's declaration establish his minimum contacts for purposes of jurisdiction.

DISCUSSION

■ California law recognizes two ways in which the constitutional "minimum contacts" requirement (see *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154]) may be satisfied. In some cases, the nonresident defendant's contacts with the forum state may be so "extensive or wide-ranging" (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr.113, 458 P.2d 457]) as to justify jurisdiction even for purposes unrelated to the defendant's contacts. (See *Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437 [96 L.Ed. 485, 72 S.Ct. 413]; compare *Hanson* v. *Denckla* (1958) 357 U.S. 235, 251 [2 L.Ed.2d 1283, 1296, 78 S.Ct. 1228].) In other cases, however, where the defendant's contacts are more limited, due process demands he only be subjected to the jurisdiction of the forum state where the litigation arises out of his activities in that state. (See, e.g., *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; *Buckeye Boiler Co., supra,* 71 Cal.2d 893, 899; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143 [127 Cal.Rptr. 352, 545 P.2d 264].)

■ We need not concern ourselves with whether California could assert jurisdiction over Weinberger for all purposes because it is clear the California contacts relied on by Safe-Lab are part and parcel of the consulting transaction which gives rise to this litigation. Those contacts are, essentially: (1) Weinberger contracted with a California corporation; (2) he came to California to negotiate that contract; (3) the contract provided that its terms were to be governed by California law; (4) Weinberger made monthly trips to California to consult with the company; and (5) 5 percent of his marketing activities were directed at California. In our view, these contacts unquestionably give rise to personal jurisdiction over Weinberger as to controversies arising from the consulting contract with Safe-Lab.

■ While much of the law relating to the assertion of personal jurisdiction over nonresidents has involved foreign corporations and the extent to which they are "doing business" in the state (e.g., *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893), the principles to be distilled from these cases are, as a general proposition, equally applicable to nonresident individuals engaged in independent economic activity. (See, e.g., *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143; *Ratcliffe* v. *Pedersen* (1975) 51 Cal.App.3d 89 [123 Cal.Rptr. 793]; 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 102, pp. 468-469.) ■ Where the cause of action asserted against the

---

The judge also appears to have been concerned whether the contract was actually entered into in California and may have granted the motion because Safe-Lab did not sustain its burden of demonstrating that fact. As we explain, we do not view the technical "situs" of the contract as determinative of the jurisdictional issue.

defendant is based on a contract, the making and performance of that contract in California will be sufficient to sustain jurisdiction even if the defendant has no other California contacts. (*Ratcliffe* v. *Pedersen, supra,* 51 Cal.App.3d at p. 94.) This case, however, is different from *Ratcliffe* in that the contract relied on by plaintiffs there was clearly made and performed in California.[2] Here, Weinberger argues that although he negotiated the contract in California, he entered into it while he was in Nevada and he thereafter performed it almost entirely outside of California.

 It is unnecessary for us to precisely define, as seemed to trouble the trial court, where this contract was "entered into." The contract was indisputably negotiated in California and was to be governed by California law. Pursuant to its terms, Weinberger was required to come to California monthly to report to and consult with Safe-Lab. A small but not insignificant portion of his work was directed at California markets. As the United States Supreme Court has explained, "It is sufficient for purposes of due process that the suit was based on a contract which had *substantial connection* with [the forum] State."[3] (*McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223 [2 L.Ed.2d 223, 226], italics added.)

The circumstances of *McGee* are illustrative. There, an action was brought against an insurance company which had never done any business in California apart from the policy at issue in the suit. The court nonetheless held that California could properly assert jurisdiction because the cause of action for breach of contract arose out of the insurance company's purposeful, albeit isolated, contact with this state. (*Id.* at pp. 223-224 [2 L.Ed.2d at pp. 226-227].)

The only significant distinction between *McGee* and this case is that the defendant in *McGee* was a foreign corporation whereas Weinberger is a nonresident individual. It is certainly relevant for purposes of balancing the relative convenience of the parties (*Cornelison* v. *Chaney, supra,* 16 Cal.3d

---

[2] The plaintiffs in *Ratcliffe* were not parties to the California contract but instead were persons who had dealt with the other party to that contract and claimed he had represented he was an agent of Pedersen, the nonresident defendant.

[3] *Stanley Consultants, Inc.* v. *Superior Court* (1978) 77 Cal.App.3d 444 [143 Cal.Rptr. 655], relied on by Weinberger, is inapposite. In one sense, *Stanley* is the flip-side of this case: a California resident suing a nonresident corporation for breach of contract. The nature of the substantive contacts, however, is much different. Although the defendant corporation had some minor isolated contacts with California, they were insufficient to support general jurisdiction and were unrelated to the contract sued on. That contract, although it had its genesis in a phone call from the defendant to the plaintiff in California, was negotiated and entered into at the defendant's headquarters in Iowa. Thereafter, plaintiff was employed by defendant totally outside California. In fact, plaintiff never returned to California until after his contract was terminated. In contrast to this case, the facts of *Stanley* demonstrated there was no "substantial connection" between the contract and California.

at pp. 150-151) that an individual may suffer a greater hardship in coming to another state to defend a lawsuit than would a corporation. Here, however, Weinberger has already been making monthly trips to San Diego. Moreover, "we cannot overlook the fact that [Weinberger's] contacts with California . . . are far more extensive than those of the defendant in *McGee*." (*Id.* at p. 150, fn. omitted.)

Finally, Weinberger ignores the fact that he agreed to have California law applied to the transaction. "Conduct by a person outside the forum state purposefully availing himself of the law of the state for the purpose of entering into a contract with a resident of the forum is a sufficient minimum contact." (*Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 996 [107 Cal.Rptr. 744].) ▮ For a choice of law provision to be enforceable, the contract subject to such a provision must bear a reasonable relation to the chosen state. (*Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 108 [186 Cal.Rptr. 740].) ▮ It would indeed be questionable were we to conclude that the connection between this contract and California was insufficient to justify jurisdiction after the parties themselves had already determined there was a "reasonable relationship" between the state and the consulting agreement.

Under these circumstances, we are compelled to hold that Weinberger's consulting contract with Safe-Lab has a "substantial connection" with California so as to justify jurisdiction over Weinberger as to litigation seeking to enforce the terms of that contract.

### DISPOSITION

The order quashing service of summons is reversed. The parties to bear their respective costs.

Todd, J., and Benke, J., concurred.